# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| BOY RACER INC., | No. |
| Plaintiff, | Judge:<br>Magistrate: |
| v. | **COMPLAINT** |
| JOHN DOE, | **JURY TRIAL DEMANDED** |
| Defendant. | |

## COMPLAINT – JURY TRIAL DEMANDED

Plaintiff Boy Racer Inc., through its undersigned counsel, hereby files this Complaint requesting damages and injunctive relief, and alleges as follows:

### NATURE OF THE CASE

1. Plaintiff files this action for copyright infringement under the United States Copyright Act and related common law claims of civil conspiracy and contributory infringement to combat the willful and intentional infringement of one of its creative works. John Doe and his joint tortfeasors, whose names Plaintiff expects to ascertain during discovery, knowingly and illegally, reproduced and distributed Plaintiff's copyrighted creative work, and materially contributed to the infringing conduct of one another by acting in concert via the BitTorrent file sharing protocol and, upon information and belief, continue to do the same. Plaintiff seeks a permanent injunction, statutory or actual damages, award of costs and attorney's fees, and other relief.

## THE PARTIES

2.  Plaintiff Boy Racer Inc. is a corporation organized and existing under the laws of the State of New York. Plaintiff is the exclusive holder of the relevant rights with respect to the copyrighted creative work that is the subject of this Complaint.

3.  Plaintiff is a producer of adult entertainment content. Plaintiff's founder and owner, Joanna Angel, is recognized as one of the most popular stars in the adult industry and is widely credited with developing a new genre of adult content. Ms. Angel has been profiled by such major media sources as CNBC and the New York Times. In 2010, Ms. Angel appeared in an anti-piracy public service announcement for the Free Speech Coalition. Ms. Angel holds a bachelor of arts degree in English literature with a minor in film studies. Plaintiff invests significant capital in producing the content associated with its brand and has produced substantial numbers of videos and photographs. The copyrighted work at issue here is one of these adult videos, "Burning Angel – Festival" (the "Video").

4.  John Doe is a serial infringer of Plaintiff's works. Plaintiff's agents have observed John Doe engaging in infringing acts with respect to several of Plaintiff's videos in addition to the Video. Plaintiff seeks to hold John Doe joint and severally liable for the extensive damages caused by his unauthorized reproduction and distribution of Plaintiff's Video.

5.  John Doe's and his joint tortfeasors' actual names are unknown to Plaintiff. Instead, they are known to Plaintiff only by an Internet Protocol ("IP") address, which is a number assigned to devices, such as computers, connected to the Internet. In the course of monitoring Internet-based infringement of its copyrighted content, Plaintiff's agents observed unlawful reproduction and distribution occurring among the IP addresses listed on Exhibit A, attached hereto, via the BitTorrent protocol. John Doe's IP address, identified as 24.107.12.149

(with his time of infringement indicated as February 15, 2012, 04:14:31 (UTC)) is listed in Exhibit A along with IP addresses of his joint tortfeasors.

6. Plaintiff cannot ascertain John Doe's or his joint tortfeasors' actual identities without information from their Internet Service Providers ("ISPs").

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over the copyright infringement claim under 17 U.S.C. §§ 101, *et seq.*, (the Copyright Act), 28 U.S.C. § 1331 (actions arising under the laws of the United States), and 28 U.S.C. § 1338(a) (actions arising under an Act of Congress relating to copyrights). This Court has supplemental jurisdiction over the civil conspiracy claim and the contributory infringement claim under 28 U.S.C. § 1367(a) because they are so related to Plaintiff's copyright infringement claim, which is within this Court's original jurisdiction, that these three claims form part of the same case and controversy under Article III of the United States Constitution.

8. This Court has personal jurisdiction because upon information and belief, John Doe either resides in or committed copyright infringement in the State of Missouri. Plaintiff used geolocation technology to trace the IP address of John Doe to a point of origin within the State of Missouri. Geolocation is a method for ascertaining the likely geographic region associated with a given IP address at a given date and time. Although not a litmus test for personal jurisdiction, the use of geolocation gives Plaintiff good cause for asserting that personal jurisdiction is proper over the Defendant.

9. In the alternative, this Court has personal jurisdiction over John Doe under the Missouri long-arm statute, Mo. Rev. Stat. § 506.500. 1., because he downloaded copyrighted content from or uploaded it to Missouri residents, thus committing a tortious act within the

meaning of the statute, and because he participated in a civil conspiracy with Missouri residents to induce, cause, and materially contribute to the commitment of copyright infringement of Plaintiff's Video.

10. Venue is properly founded in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1400(a) because John Doe resides in this District, may be found in this District, or a substantial part of the events giving rise to the claims in this action occurred within this District.

## BACKGROUND

11. BitTorrent is a modern file sharing method ("protocol") used for distributing data via the Internet.

12. Traditional file transfer protocols involve a central server, which distributes data directly to individual users. This method is prone to collapse when large numbers of users request data from the central server, in which case the server can become overburdened and the rate of data transmission can slow considerably or cease altogether. In addition, the reliability of access to the data stored on a server is largely dependent on the server's ability to continue functioning for prolonged periods of time under high resource demands.

13. Standard peer-to-peer ("P2P") protocols involve a one-to-one transfer of whole files between a single uploader and single downloader. Although standard P2P protocols solve some of the issues associated with traditional file transfer protocols, these protocols still suffer from such issues as scalability. For example, when a popular file is released (e.g. an illegal copy of the latest blockbuster movie) the initial source of the file performs a one-to-one whole file transfer to a third party, who then performs similar transfers. The one-to-one whole file transfer

method can significantly delay the spread of a file across the world because the initial spread is so limited.

14. In contrast, the BitTorrent protocol is a decentralized method of distributing data. Instead of relying on a central server to distribute data directly to individual users, the BitTorrent protocol allows individual users to distribute data among themselves. Further, the BitTorrent protocol involves breaking a single large file into many small pieces, which can be transferred much more quickly than a single large file and in turn redistributed much more quickly than a single large file. Moreover, each peer can download missing pieces of the file from multiple sources—often simultaneously—which causes transfers to be fast and reliable. After downloading a piece, a peer automatically becomes a source for the piece. This distribution method contrasts sharply with a one-to-one whole file transfer method.

15. In BitTorrent vernacular, individual downloaders/distributors of a particular file are called peers. The group of peers involved in downloading/distributing a particular file is called a swarm. A server which stores a list of peers in a swarm is called a tracker. A computer program that implements the BitTorrent protocol is called a BitTorrent client. Each swarm is unique to a particular file.

16. The BitTorrent protocol operates as follows. First, a user locates a small "torrent" file. This file contains information about the files to be shared and about the tracker, the computer that coordinates the file distribution. Second, the user loads the torrent file into a BitTorrent client, which automatically attempts to connect to the tracker listed in the torrent file. Third, the tracker responds with a list of peers and the BitTorrent client connects to those peers to begin downloading data from and distributing data to the other peers in the swarm. When the download is complete, the BitTorrent client continues distributing data to other peers in the

swarm until the user manually disconnects from the swarm or the BitTorrent client otherwise does the same.

17. The degree of anonymity provided by the BitTorrent protocol is extremely low. Because the protocol is based on peers connecting to one another, a peer must broadcast identifying information (i.e. an IP address) before it can receive data. Nevertheless, the actual names of peers in a swarm are unknown, as the users are allowed to download and distribute under the cover of their IP addresses.

18. The BitTorrent protocol is an extremely popular method for transferring data. The size of swarms for popular files can reach into the tens of thousands of unique peers. A swarm will commonly have peers from many, if not every, state in the United States and several countries around the world. And every peer in the swarm participates in distributing the file to dozens, hundreds, or even thousands of other peers.

19. The BitTorrent protocol is also an extremely popular method for unlawfully copying, reproducing, and distributing files in violation of the copyright laws of the United States. A broad range of copyrighted albums, audiovisual files, photographs, software, and other forms of media are available for illegal reproduction and distribution via the BitTorrent protocol.

20. Efforts at combating BitTorrent-based copyright infringement have been stymied by BitTorrent's decentralized nature. Because there are no central servers to enjoin from unlawfully distributing copyrighted content, there is no primary target on which to focus anti-piracy efforts. Indeed, the same decentralization that makes the BitTorrent protocol an extremely robust and efficient means of transferring enormous quantities of data also acts to insulate it from anti-piracy measures. This lawsuit is Plaintiff's only practical means of combating BitTorrent-based infringement of the Video.

## ALLEGATIONS COMMON TO ALL COUNTS

21.     Plaintiff owns the copyright to the Video.

22.     Plaintiff has applied for and received a certificate of copyright registration for the Video from the United States Copyright Office (Reg. No. PA0001781739).

23.     The torrent file used to access the copyrighted material was named in a manner that would have provided an ordinary individual with notice that the Video was protected under the copyright laws of the United States.

24.     Plaintiff employs proprietary P2P network forensic software to perform exhaustive real time monitoring of the BitTorrent-based swarm involved in distributing the Video. This software is effective in capturing data about the activity of peers in a swarm and their infringing conduct.

25.     John Doe and his joint tortfeasors, without Plaintiff's authorization or license, intentionally downloaded a torrent file particular to Plaintiff's Video, purposefully loaded that torrent file into their BitTorrent clients, entered a BitTorrent swarm particular to Plaintiff's Video, and reproduced and distributed the Video to numerous third parties.

26.     By willfully entering a BitTorrent swarm with the intent to download an unlawful copy of the Plaintiff's Video, John Doe and his joint tortfeasors, each and individually, automatically became an uploader as well as a downloader. John Doe and his joint tortfeasors thereby provided pieces of the Video to each other and other infringing peers in the swarm for them to exchange and distribute, with the overarching purpose that the ever-growing swarm will jointly contribute to the complete download of the Video for all individuals that enter the swarm at any given moment.

27. Plaintiff observed John Doe's and his joint tortfeasors' activities in the torrent swarm specific to the Video and created a log identifying John Doe and his joint tortfeasors by their IP address and the date and time of their unlawful activity. The IP addresses associated with John Doe's and his joint tortfeasors' infringement are attached as Exhibit A.

## COUNT I – COPYRIGHT INFRINGEMENT

28. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

29. John Doe's and his joint tortfeasors' conduct infringes upon Plaintiff's exclusive rights of reproduction and distribution that are protected under the Copyright Act.

30. John Doe and his joint tortfeasors knew or had constructive knowledge that their acts constituted copyright infringement.

31. John Doe's and his joint tortfeasors' conduct was willful within the meaning of the Copyright Act: intentional, and with indifference to the Plaintiff's rights.

32. Plaintiff has been damaged by John Doe's and his joint tortfeasors' conduct, including but not limited to economic and reputation losses. Plaintiff continues to be damaged by such conduct, and has no adequate remedy at law to compensate the Plaintiff for all of the possible damages stemming from the John Doe's and his joint tortfeasors' conduct.

33. Plaintiff hereby reserves the right, pursuant to 17 U.S.C. § 504(c), to elect to recover statutory damages for each infringement, in lieu of seeking recovery of actual damages.

34. As John Doe's and his joint tortfeasors' infringement was intentional and willful, the Plaintiff is entitled to an award of statutory damages, exemplary damages, attorneys' fees, and the costs of the suit.

## COUNT II – CIVIL CONSPIRACY

35. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

36. In using the peer-to-peer BitTorrent file distribution method, John Doe and his joint tortfeasors engaged in a concerted action with other yet unnamed individuals to reproduce and distribute Plaintiff's Video by exchanging pieces of the Video file in the torrent swarm with their peers.

37. John Doe and his joint tortfeasors downloaded a torrent file, opened it using a BitTorrent client, and then entered a torrent swarm comprised of other individuals distributing and reproducing Plaintiff's Video.

38. Participants in the torrent swarm have conspired to provide other individuals with pieces of the Video in exchange for receiving other pieces of the same Video to eventually obtain a complete copy of the file.

39. In furtherance of this civil conspiracy, John Doe and his joint tortfeasors committed overt tortious and unlawful acts by using BitTorrent software to download the Video from and distribute it to others, and were willful participants in this joint activity.

40. As a proximate result of this conspiracy, Plaintiff has been damaged, as is more fully alleged above.

## COUNT III – CONTRIBUTORY INFRINGEMENT

41. Plaintiff hereby incorporates by reference each and every allegation contained in the preceding paragraphs as if set forth fully herein.

42. Each peer in a unique swarm possesses the same infringing work with the same exact hash value. Therefore, each infringer possesses an exact digital copy, containing the exact

bits and pieces unique to that specific file of Plaintiff's original copyrighted work. This happens in a BitTorrent swarm through the sharing of bits and pieces of an identical unique file between the users in the swarm. In essence, although hundreds of users may be uploading the copyrighted work, a single user will receive only the exact parts of a singular upload through that exact swarm, not a compilation of available pieces from various uploads.

43. John Doe and his joint tortfeasors downloaded, uploaded and distributed the Video to other BitTorrent users through use of the protocol in the unique swarm.

44. The people who illegally downloaded the Video accessed this illegal distribution and derived portions of their illegal replication of the file from multiple persons, including, but not limited to, John Doe and his joint tortfeasors.

45. John Doe and his joint tortfeasors knew of the infringement, were each conscious of their own infringement, and John Doe and his joint tortfeasors were fully conscious that their actions resulted in multiple other persons derivatively downloading the file containing Plaintiff's Video.

46. The infringement by the other BitTorrent users who received pieces of the file from John Doe and his joint tortfeasors would not have occurred without John Doe's and his joint tortfeasors' participation in uploading Plaintiff's copyrighted works. As such, John Doe's and his joint tortfeasors' participation in the infringing activities of others is substantial and it contributed to the infringing activity of thousands of other peers over the Internet across the world.

47. John Doe's and his joint tortfeasors' acts of infringement have been willful, intentional, and purposeful, in disregard of, and indifferent to, the rights of Plaintiffs.

48. As a result of the contributory infringement of the Video by John Doe and his joint tortfeasors, Plaintiff has been damaged, as is more fully alleged in Count I.

## JURY DEMAND

49. Plaintiff hereby demands a jury trial in this case.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests Judgment and relief as follows:

1) Judgment against John Doe that he has: a) willfully infringed Plaintiff's rights in federally registered copyrights pursuant to 17 U.S.C. § 501; and b) otherwise injured the business reputation and business of Plaintiff by his acts and conduct set forth in this Complaint;

2) Judgment in favor of the Plaintiff against John Doe for actual damages or statutory damages pursuant to 17 U.S.C. § 504, at the election of Plaintiff, in an amount to be ascertained at trial;

3) Order of impoundment under 17 U.S.C. §§ 503 & 509(a) impounding all infringing copies of Plaintiff's audiovisual works, photographs or other materials, which are in John Doe's possession or under his control;

4) On Count II, an order that John Doe is jointly and severally liable to Plaintiff in the full amount of the Judgment on the basis of a common law claim for civil conspiracy to commit copyright infringement; for an award of compensatory damages in favor of the Plaintiff and against John Doe, jointly and severally, in an amount to be determined at trial;

5) On Count III, an order that John Doe is jointly and severally liable to the Plaintiff in the full amount of Judgment on the basis of a common law claim for contributory

infringement of copyright; for an award of compensatory damages in favor of the Plaintiff and against John Doe, jointly and severally, in an amount to be determined at trial;

6) Judgment in favor of Plaintiff against John Doe, awarding the Plaintiff attorneys' fees, litigation expenses (including fees and costs of expert witnesses), and other costs of this action; and

7) Judgment in favor of the Plaintiff against John Doe, awarding Plaintiff declaratory and injunctive or other equitable relief as may be just and warranted under the circumstances.

Respectfully submitted,

BOY RACER INC.

DATED: June 11, 2012

By: s/ Alvin C. Paulson
*Alvin C. Paulson*
(Bar No. 37188)
Becker, Paulson, Hoerner & Thompson, P.C.
5111 West Main Street
Belleville, IL 62226
Phone: 618-235-0020
E-mail: acp@bphlaw.com
*Attorney for Plaintiff Boy Racer Inc.*